FOSTER & ACKERMAN *vs.* JONES.*

1. Where, during two years, a husband and wife lived together on a farm held by her as a dower from the estate of a former husband, and during that time he acted as her general agent in connection therewith and made purchases as such; and where, during the third year, he remained in possession of the farm and conducted the entire business as he had done during the preceding years, and made purchases, purporting to be her agent, from persons who had known of his agency, and had no notice of its termination; if the wife knew of this traffic, and took no steps to stop it, or to put the parties on notice, she would be bound, even though he may not in fact have obtained the goods for her, but may have rented other land from the representative of the estate out of

---

*JACKSON, C. J., did not preside in this case, on account of providential cause.

which the dower was carved, and may have used the goods purchased on that farm.

2. That the husband rented the balance of the farm in which his wife had her dower, from her former husband's administrator, did not disprove his agency for her; nor was it a circumstance from which could be implied notice to strangers to this transaction, who had no knowledge of the altered character in which the husband conducted the farm, on which he remained in apparently the same way as in previous years. Nor was testimony as to such transactions admissible against strangers to them without notice.

(a) The admission of evidence complained of in the fourth and fifth grounds of the motion for new trial was erroneous; the charge requested, as set forth in the sixth ground should have been given. In so far as the charges complained of in the seventh, ninth and tenth grounds of the motion restrict the charge requested, in its application to the case, they were wrong.

(b) While it is true that a wife could not constitute her husband her agent for the purchase of goods on her credit, if they were to be used in the conduct of his business and for his benefit, if by that device she sought to render her estate liable for his debts or in that way to become his security, yet the facts did not warrant such a charge in this case.

February 1, 1887.

Husband and Wife. Principal and Agent. Evidence. Charge of Court. Before Judge LAWSON. Morgan Superior Court. March Term, 1886.

Reported in the decision.

McHENRY & McHENRY; FOSTER & BUTLER, for plaintiffs in error.

BILLUPS & MUSTIN, for defendant.

HALL, Justice.

The question upon which this case must turn is, whether the husband of the defendant was her general agent for the purchase of goods to supply her farm in the year 1883, and whether his dealings in that capacity during the previous years of 1881 and 1882, and which were recognized by the defendant, authorized the plaintiffs, who were cogn-

izant thereof, to deal with him as such general agent during the subsequent year, it appearing that they lived together on the farm at that time, and there being no apparent change in its management; and whether the rulings of the court and the directions given to the jury were legal and proper, under the facts in proof. All the other points grow out of this main issue, and are subordinate or collateral to it.

It appears from the record that the plaintiffs, as a firm, commenced business at the beginning of the year 1883, and consequently that the defendant had never, either by herself or agent, dealt with them jointly, on credit or otherwise, during the previous years; but it was shown that Foster, the senior member of the firm, had been a member of the firm of High & Foster, with whom during those years she had dealt through this agent, and whose accounts she had recognized and settled; that Ackerman, the junior member of the plaintiffs' firm, had served High during those years as clerk in a separate business he carried on in an apartment opening into the store of High & Foster; and that he was familiar with the business of the firm of which his employer was a member, and whose place he took in the new firm. It further appears that, early in January, 1883, the defendant's husband applied to the plaintiffs to sell him goods on credit, which they refused to do, because they knew him to be insolvent; but when, as agent of the defendant, sometime subsequently, he asked that the goods be sold her on credit, the request was acceded to, and they opened an account with her, and shipped most of the goods purchased by the agent to her address, to the railroad depot nearest her residence. She denied the receipt of any of these goods, or the authority of her husband to act as her agent in their purchase. The farm that she owned and cultivated was her dower, taken on the land of her former husband, Mr. Zachary; her present husband had leased the balance of the tract for the year 1883 from the representatives of Zachary, where he carried on a farm on

his own account; and the goods purchased on her credit, it is claimed, were used on that farm. When the evidence was offered to establish these facts, the plaintiffs objected to it on various grounds, but it was received over their objections. Some of these objections need not be considered, but there are others that must be examined and passed on. They are, that plaintiffs were no parties to the dealings between Zachary's representatives and defendant's husband; that they had no notice thereof, either actual or constructive, or of the altered relations in reference to the farm, brought about thereby between defendant and her husband, or of his misappropriation of the goods purchased from them on her credit. A verdict was returned in favor of the defendant, and the plaintiffs moved for a new trial, which was denied; and to that judgment they excepted. The errors of law complained of will appear from the several grounds of this motion.

The fourth and fifth grounds of the motion relate to the admission of evidence as to the dealings between the defendant's husband and the administrator of Zachary, in relation to the lands, and in overruling plaintiffs' objections thereto, as above stated.

The sixth ground complains of the refusal of the court to charge, as requested by plaintiffs' counsel in writing: "If the jury believe from the evidence that Jones was the general agent of his wife in carrying on her farming operations in 1881 and 1882, and such agency was known to Foster & Ackerman, and if they believe that Jones remained on the same farm in 1883, and no notice was given to Foster & Ackerman or the public, in any manner, by Mrs. Jones or her husband, that the agency had ceased, then Mrs. Jones would be liable in this case for whatever the testimony shows was purchased by Jones, representing himself as such agent. No secret agreement between husband and wife, revoking a general agency, if they believe there was such general agency, could relieve the principal

from the acts of the agent purporting to be done for his principal."

(7) Because the court erred in charging the jury, if they were satisfied from the evidence that the farm was rented and run by Jones, that he rented it and bought the goods for the use of the farm, and that they were furnished to be so used, then Mrs. Jones was not liable.

(8) Because the court erred in charging the jury, that Mrs. Jones could not constitute her husband her agent to purchase goods and have them charged to her, if they were to be used in the conduct of his business and for his benefit; an agency created under her hand and seal would be invalid for that purpose.—Objection, that the charge had a direct tendency to mislead the jury from the real question and issue in the case, plaintiffs' theory being that the goods were purchased for Mrs. Jones and to be used on her farm, and if not in her business, she had so acted in the past as to lead plaintiffs to believe it was her business; that they knew it was her business in preceding years, and if it had ceased to be hers and become her husband's, she was bound to give notice of such change, and her failure to do so would operate as a fraud in these dealings with her husband under the idea that he was her agent, and she would, under these facts, be liable, whether Jones was really her agent or not. In this charge, the court took from the jury the consideration of all the evidence introduced by the plaintiffs going to show that Jones had been the general agent in the management of the farm, and that he would be presumed to so continue until notice of the revocation of his agency; and left with them the single question of whether he was her agent in the management of her business, regardless of any other facts or circumstances whatever, thus compelling a verdict for the defendant under the uncontradicted evidence of said defendant that Jones had rented the farm for himself in 1883.

(9) Because the court erred in charging the jury as fol-

lows: "But if the goods were purchased by Jones as agent for his wife, and for her use and benefit, she is liable. Plaintiffs allege that he was her general agent in the purchase of the goods and in the management of her business. Look to the evidence and ascertain the truth of this assertion. If he was such agent in 1882 and 1883, and dealt with the plaintiffs' firm in such capacity, they would be authorized to conclude, as a legal proposition, that such agency continued until they received notice of its termination; that is, as long as he continued to manage her business;"—objection being that the last clause of the charge, limiting it to the sole consideration as to whether Jones was managing her business or not, was error, and took away from the jury all the evidence going to show fraud on the part of the defendant, and bad faith in not making known that the agency had ceased, and confined the jury to the single question, whether it was Jones's business or his wife's. If Jones's, then his wife was not liable. This charge did not submit the question as to her fraudulent concealment of revocation made in her evidence to the jury.

(10) Because the court erred in charging the jury as follows: "Defendant's liability is predicated on the agency of her husband."—Objection, that the charge did not go far enough; that it covered only one of the questions, and not the others. It made no difference whether Jones, when he bought the goods, was agent or not for his wife in her business; she would be liable if she had so acted as to lead plaintiffs to believe he was her agent, and never gave them any notice to the contrary.

(11) Because all that portion of the charge of the court concerning defendant and her husband purchasing goods together from Harris and Burr and Burney, was irrelevant and not authorized by the testimony, and tended to mislead the jury and give undue weight to the defendant's evidence.

The remaining grounds of the motion, the twelfth and

thirteenth, are too general, making no specifications of error upon which it would be proper for the court to pass.

1. We do not think the agency of Jones was special, either as to the thing to be done or as to its duration. "A special agency properly exists when there is a delegation of authority to do a single act; a general agency properly exists when there is a delegation to do all acts connected with a particular trade, business or employment. Thus, a person who is authorized by his principal to execute a particular deed or sign a particular contract, or to purchase a particular parcel of merchandise, is a special agent. But a person who is authorized by his principal to execute all deeds, sign all contracts, or purchase all goods required in a particular trade, business or employment, is a general agent in that trade, business or employment." Story on Agency, §17.

The proofs made by the plaintiffs as to Jones's general agency for his wife in 1883, unless contradicted (and we shall presently see they were not), would lead us to the conclusion that he was authorized to act for her in that year. There can be no doubt that he was her general agent for the two preceding years; indeed, that fact is not contested; and we think there is sufficient evidence that, as to the third parties who had knowledge of his previous dealings, he was her agent in 1883. During that year, he remained in possession of the farm and conducted the whole business as he had done for the two preceding years. If any change was made in his relations, it seems to have been known only to himself and wife, and perhaps to the administrator of Zachary. It is quite clear that it was never communicated to the plaintiffs or others having knowledge of the previous modes in which these parties dealt. It must be born in mind, too, that periodical statements of these accounts had been made out and forwarded to the defendant; that some of the goods shipped and consigned to her had been delivered by the railroad agents to her husband as her agent; that she had seen a box of the

merchandise that was shipped and directed to her, in her yard; that her attention was called to it and she inquired about it.  These facts would render it very difficult to believe that Jones was not her general agent in that year, or that, by her conduct, she wished to create that impression upon the public.  If she knew that this traffic was going on, and took no steps to correct it, or to put the parties with whom he was thus dealing on notice to the contrary, then she would be liable to a graver imputation than that arising from mere negligence or indifference.  Code, §2635, sub-section 3, declares that, where one party knows that the other is laboring under a delusion with respect to the property sold or the condition of the other party, and yet keeps silence, such concealment may in itself amount to a fraud.  The general agency of Jones for the two previous years was known to the plaintiffs, who seemed to have dealt with her under that impression ; certainly in 1883 she could not privately limit it so as to affect her rights.  The real question upon this point is, whether the evidence was sufficient to establish the fact that Jones was held out, by her consent and knowledge, to those with whom he dealt in her name, as having authority to act as her general agent, whether he was in fact such or not; or else, whether there was enough to induce reasonably prudent persons, who had had previous dealings with him in that capacity, to believe that his agency still continued.

2.  We do not think that his agency was disproved, especially as to third persons, by the fact that he rented the balance of the farm, in which his wife had her dower, from her former husband's administrator, or that this was a circumstance from which notice could be implied by strangers to this particular transaction, who had no knowledge of the altered character in which Jones was conducting the farm, he remaining on it in apparently the same way as he did in previous years.  Besides, we think that the testimony of such transactions without notice, could not properly have been admitted as against strangers to them.  We

therefore conclude that the rulings complained of in the fourth and fifth grounds of the motion were erroneous ; and that the charge requested, as set forth in the sixth ground of the motion, should have been given, as it covered every aspect of the case, and was in accordance with the law governing its decision.   So far as the charges complained of in the seventh, ninth and tenth grounds of the motion restrict this charge requested, in its application to the case, we consider them wrong,   As to the eighth ground of the motion, it is undeniable that the wife could not constitute her husband her agent for the purchase of goods on her credit, if they were to be used in the conduct of his business and for his benefit, if, by that device, she sought to render her estate liable for his debts or in that way to become his security ; but there were no facts, as it seems to us, developed by the evidence, that could render the charge proper in this case.   It was inapposite and tended to divert the attention of the jury from the real issue on which they had to pass. .

We do not think that this case was fully and fairly submitted to the jury, upon the evidence as above set forth, and we deem it best to send it back for another hearing.

Judgment reversed.