## 35372. BROMBERG *v.* DRAKE.

Decided October 22, 1954—Rehearing denied November 23, 1954.

*Dudley Cook*, for plaintiff in error.

*Harold Karp, Ferrin Mathews*, contra.

GARDNER, P. J. ■ It is the contention of the defendant that the plaintiff did not procure a purchaser who was ready, able, and willing to buy the property of the owner at a price satisfactory to the owner. The record shows that the price of $53,000, including a cash payment of $15,000, was the price for which the house was sold and therefore was the price satisfactory to the owner. The legal tradition is recognized that Code § 4-213 applies. That section reads: "Broker's right to Commission.— The fact that property is placed in the hands of a broker to sell

shall not prevent the owner from selling, unless otherwise agreed. The broker's commissions are earned when, during the agency, he finds a purchaser ready, able and willing to buy, and who actually offers to buy on the terms stipulated by the owner." A Code section involving civil law is frequently a compendium of the legal technique involved in the subject matter in question. The translation of Code sections is reflected by the courts in decisions rendered relative to such Code sections and are sometimes seemingly paradoxial; but a sincere student of the law will be able to readily discern and agree that in many fields of law each case must stand upon its own facts. Predicated upon this well-known and accepted theory, we hold that the cases of *Fox* v. *Von Kamp*, 52 *Ga. App.* 776 (184 S. E. 645), *Starke* v. *Moultrie Banking Co.*, 58 *Ga. App.* 668 (199 S. E. 777), and *Crutchfield* v. *Western Electric Co.*, 66 *Ga. App.* 161 (17 S. E. 2d 246), cited by counsel for the defendant, are not authority for reversing the judgment of the trial court. In the *Fox* case it was shown, among many other things to distinguish the facts in that case from those in the instant case, that it was very doubtful that the agent there involved had a listing on the property sold. In the *Starke* case this court upheld the grant of a nonsuit on the ground that the evidence failed to show a prima facie case that the efforts of the agents were the procuring cause of the sale. Not so in the instant case. In the *Crutchfield* case it was shown by the evidence that the purchaser who had spoken to the agent about the property had abandoned all idea of the trade. In the instant case, it is shown that the purchaser, when shown other houses, did not abandon the idea of purchasing the house here involved. There are other evidential facts in all three of the cases cited which differentiate those cases from the case at bar.

Being mindful of the fact that we have hereinbefore stated that the facts in no two cases are exactly alike, we call attention to one particular case and the citations therein which influences us to rule in favor of the plaintiff in the instant case. In *Vaughn* v. *Clements*, 65 *Ga. App.* 823 (16 S. E. 2d 607) this court said: "Ordinarily an agent to sell earns his commission only when he finds a customer ready, able, and willing to buy on the terms stipulated by the principal; but the principal cannot, with

the knowledge of the negotiations between the purchaser and the agent, and while such negotiations are still pending defeat the right of the agent to recover such commission by interfering with and himself completing the sale of which the agent was the procuring cause." There are many other decisions to the same effect.

As far as the right of Mrs. DeGolian to look at property to be bought by her busy husband, we do not think that this warrants extensive discussion, since intelligent wives frequently survey markets and make decisions as to purchases, even though such purchases must be approved and paid for by the husband. We might say, however, that there is sufficient evidence to show that she was delegated the authority to see houses, but it was understood that Mr. DeGolian would necessarily have to approve the purchase before completion of negotiations. This may be done legally under the theory of law regarding such agency. See *Foster & Ackerman* v. *Jones,* 78 *Ga.* 150, 156 (1 S. E. 275). There is ample evidence to show that Mr. DeGolian approved Mrs. DeGolian's seeing properties, and that he sometimes followed her suggestions and he himself investigated such properties, as he did in regard to the house which they eventually bought, the one here involved. The evidence shows that Mrs. DeGolian was in constant touch with Mrs. Caldwell, the agent of the plaintiff. There is no testimony that the defendant ever revoked the agency of the plaintiff. Mr. DeGolian was at all times fully cognizant that Mrs. DeGolian was in communication with the plaintiff and was trying to find a house for the DeGolian family to purchase. Keeping in mind that both Mr. and Mrs. DeGolian really wanted the property of the defendant, there is nothing in the record to show that counsel for the plaintiff protested the authority of Mrs. Caldwell to act as the agent of Drake Realty Company.

The courts are trustees for the interests of the people, and in guarding such interests must look to the seemingly small differences in facts, in considering general grounds, to arrive at a firm but restrained policy of realistic interpretation of codified law relative to such facts. This we have done in the instant case in arriving at the conclusion that there is ample evidence to support the verdict. See *May* v. *Sibley,* 85 *Ga. App.* 544 (1) (69 S. E. 2d 693). There is no merit in the general grounds.

■ It is never error to refuse to direct a verdict, and special ground 1, complaining that the court erred in not directing a verdict for the defendant, is without merit. The provisions of Code (Ann. Supp.) § 110-113 (Ga. L. 1953, Nov.-Dec. Sess., p. 444), requiring a motion to direct a verdict as a condition precedent to a proper motion for judgment notwithstanding the verdict made after the trial concludes, does not change this rule of law, but merely provides a new method (inapplicable here) by which a failure to direct a verdict may subsequently become the basis of reversible error, but where that statute is pursued, the error is not in failing to direct the verdict in the first instance, but in failing to grant the motion for a judgment notwithstanding the verdict.

Special ground 2 assigns error because the court, over objection, permitted the plaintiff, Drake, to testify that there was activity on the part of himself and his employee, Mrs. Caldwell, concerning the sale of the property in question, and particularly was there objection as to conversations between the witness Drake and his saleslady, Caldwell, for, while the saleslady could testify as to what she did, the witness could not testify as to conversations between him and the saleslady. The court overruled the objections and admitted the testimony as a circumstance. Details of the conversations were not gone into. This ground is without merit.

Special ground 3 assigns error because the court admitted, over objections of the defendant, the conversations between Mrs. DeGolian and Mrs. Caldwell after March concerning whether or not Mrs. Caldwell was trying to get the defendant to reduce the price of the house in question, on the ground that the conversations between these two ladies were hearsay, inadmissible, and prejudicial. The court said: "I think it is admissible under the particular facts of this case" and then overruled the objections. Under all the evidence and the facts in this case, we think that the court was correct in admitting this testimony. This ground is without merit.

Special ground 4 assigns error because it nowhere appears in the evidence that Mrs. Caldwell, the agent of the plaintiff, was licensed to sell real estate in the State of Georgia. It must be kept in mind that the evidence reveals throughout that the com-

mission was claimed and the suit was instituted in the name of Drake Realty Company. The suit was not brought in the name of Mrs. Caldwell. The evidence reveals that Mrs. Caldwell was an agent of Drake Realty Company. We cannot assume that she was operating as a sales agent illegally. The evidence reveals that a contract introduced in evidence and admitted without objection was signed: "Drake Realty Company by Hugh Drake." The evidence further reveals that on one occasion at least Mr. Drake, Mr. and Mrs. DeGolian, and Mrs. Caldwell went to the home of the defendant, Bromberg, and Bromberg showed the house to the party, which included the DeGolians who finally purchased the house. This ground shows no cause for reversal.

Special ground 5 assigns error on the following excerpt from the charge of the court: "Where the owner of property has listed it with the real estate broker to be sold and the broker procures a prospective purchaser, and the owner, with knowledge of this fact, intervenes or sells the property to the customer or prospective purchaser procured by the broker, an inference is authorized that the broker has earned a commission and can recover it from the owner." It is contended that this excerpt was not authorized under the facts of the instant case. We disagree with this contention for the reasons that the evidence reveals that at the time of the sale the defendant had authorized Drake Realty Company, along with many other real-estate concerns, to continue to try to sell the property. In this special ground our attention is called to the following testimony: "Q. Isn't it a fair statement that other than bringing the DeGolians in when they made the first offer, you had nothing to do with this final sale?" Answer by Mrs. Caldwell: "They left me out of it. They left Drake Realty Company out of it." It appears to us that this evidence does not substantiate the contentions of the plaintiff. The very suit concerned the issue that the defendant left the real-estate company out, and the defendant closed the trade himself with DeGolian, DeGolian being the final purchaser who was introduced by the plaintiff into the transaction. This ground is not meritorious.

Special ground 6 assigns error because the court failed to instruct the jury on the question of agency or to give them any

rule by which they could determine whether or not agency existed between Mr. and Mrs. DeGolian, and to what extent Mr. DeGolian was bound by conversations between the plaintiff's agent and Mrs. DeGolian. There are a number of questions and answers set out in the record concerning such relations. We have referred to this matter hereinbefore. There was no request to charge on the subject of agency. In the absence of a request and in view of the whole charge of the court, this ground shows no reversible error.

The court did not err in its judgment denying the amended motion for new trial.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*